**Theresa M. COLLINS, Plaintiff,**

**v.**

**CHANDLER UNIFIED SCHOOL DISTRICT, Anna Marie Jacobson, Ben Ruoti, Lynn Jones, Edward Basha and Betty Bogle, in their capacity as members of the Board of Education of the Chandler Unified School District, James T. Perry, in his capacity as Superintendent of the Chandler Unified School District, and Howard T. Conley, in his capacity as principal of Chandler High School, Defendants.**

**No. CIV 78–741 PHX CAM.**

United States District Court, D. Arizona.

March 29, 1979.

---

Brown & Bain, Phoenix, Ariz., for plaintiff.

Q. Dale Hatch, Deputy County Atty., Phoenix, Ariz., for defendants.

## OPINION and ORDER

MUECKE, District Judge.

Theresa M. Collins, the plaintiff in this case, is a parent of a student presently attending the public high school in Chandler, Arizona.

As a part of the program of Chandler High School, assemblies of the student body are held periodically, including the current 1978–79 year, on the premises of the High School during regular school hours.

During the past two school years, the Chandler High School Student Council requested permission to open the student body assemblies with a prayer selected by a member of the student body picked by the Student Council. Such permission was granted by the High School Principal, Howard T. Conley, a defendant in this action, and various student assemblies were opened with such prayers.

Approval and permission for these prayers was granted by the School Principal with the knowledge and consent of the Superintendent of the District, James T. Perry, also a defendant, and by all the members of the Board of Education of the District, also named as defendants.

All of the defendants have indicated that they intend to permit students tó open student assemblies at the Chandler High School with prayers unless advised otherwise by the Office of the Maricopa County Attorney or this Court.

The Office of the Maricopa County Attorney has advised the defendants that they may allow the student prayers at assemblies · to continue, and in fact that office is representing the defendants in this action.

The plaintiff mother, who is a resident within the boundaries of the Chandler Unified School District, located in Chandler, Arizona,[1] seeks to restrain the defendants pursuant to 28 U.S.C. § 1343(4) from permitting, authorizing, or condoning prayers at student assemblies alleging such prayers

---

1. And as such, has standing to bring this suit. *McCollum v. Board of Education,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948).

to be in violation of the First and Fourteenth Amendments to the Constitution of the United States and of 42 U.S.C. § 1983, in that such conduct violates the prohibition against the governmental establishment of religion.

Plaintiff also requests a declaratory judgment pursuant to 28 U.S.C. § 2201 seeking to have this Court determine whether or not the Chandler School policy of allowing prayers to be said in a school with the knowledge, approval, or permission of the defendant school authorities also violates the First and Fourteenth Amendments of the Constitution.

Finally, plaintiff asks for costs, expenses, and pursuant to 42 U.S.C. § 1988 (Supp. 1977), for attorneys' fees.

Plaintiff and defendants seek to resolve these issues by way of cross-motions for summary judgment, the defendants simply requesting that a judgment be entered denying all the requests of the plaintiff, including the request for an injunction on the grounds that the conduct complained of is allowed under the First Amendment of the Constitution as free speech in that the prayers by the students are voluntary and do not constitute a governmental establishment of religion, and also that no attorneys' fees be allowed pursuant to 42 U.S.C. § 1988 (Supp.1977) for the reason that there is no allegation in the complaint that plaintiff's civil rights have been violated, and plaintiff is not a student, nor is any student a named plaintiff.

Defendant has stipulated to all the facts as stated by the plaintiff, and reiterated in this opinion, so that this Court need only decide the significance these facts have in law pursuant to the cross-motions for summary judgment, there being no material issues of fact.

The parties have also agreed that the defendant, Chandler Unified School District, is a unified school district established pursuant to Title 15, Chapter 4.1, Article I of the Arizona Revised Statutes and is a political subdivision of the State of Arizona. They have further agreed that the defendant, School Board Members, are required by statute to prescribe and enforce rules for the government of the schools in the District, and the defendant, Conley, Principal of the Chandler High School, is responsible for carrying out the rules prescribed by the Board as they pertain to the High School, and further that the defendant, Perry, Superintendent of the District, is employed by the Board pursuant to A.R.S. §§ 15–496 and 15–444(A)(1).

Prayers in the schools is a controversial issue, generating much heat without always concomitant light. It is a favorite of those who favor simplification of all issues, to those unaware or indifferent to the history of our Bill of Rights, or especially (in the context of this case) the Establishment Clause, and can have great appeal for the demagogue.

Ever since 1962 when the United States Supreme Court in *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601, struck down any official school prayer imposed by school officials to be recited in public schools at the beginning of each school day—even if the prayer is denominationally neutral and pupils who wished to do so might remain silent or be excused from the room while the prayer is being recited—a public controversy concerning this issue of school prayers has raged.

The High Court simply found such a practice to be wholly inconsistent with the Establishment Clause and it would be well to once again consider the reasons that they gave for this view in this decision.

The petitioners contend among other things that the state laws requiring or permitting use of the Regents' prayer must be struck down as a violation of the Establishment Clause because that prayer was composed by governmental officials as a part of a governmental program to further religious beliefs. For this reason, petitioners argue, the State's use of the Regents' prayer in its public school system breaches the constitutional wall of separation between Church and State. We agree with that contention since we think that the constitutional prohibition

against laws respecting an establishment of religion must at least mean that in this country it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government.

It is a matter of history that this very practice of establishing governmentally composed prayers for religious services was one of the reasons which caused many of our early colonists to leave England and seek religious freedom in America. Id. p. 425, 82 S.Ct. p. 1264.

\* \* \* \* \* \*

It is an unfortunate fact of history that when some of the very groups which had most strenuously opposed the established Church of England found themselves sufficiently in control of colonial governments in this country to write their own prayers into law, they passed laws making their own religion the official religion of their respective colonies. Id. p. 427, 82 S.Ct. p. 1265.

\* \* \* \* \* \*

By the time of the adoption of the Constitution, our history shows that there was a wide-spread awareness among many Americans of the dangers of a union of Church and State. These people knew, some of them from bitter personal experience, that one of the greatest dangers to the freedom of the individual to worship in his own way lay in the Government's placing its official stamp of approval upon one particular kind of prayer or one particular form of religious services. Id. p. 429, 82 S.Ct. p. 1266.

\* \* \* \* \* \*

The First Amendment was added to the Constitution to stand as a guarantee that neither the power nor the prestige of the Federal Government would be used to control, support or influence the kinds of prayer the American people can say—Id. p. 429, 82 S.Ct. p. 1266.

\* \* \* \* \* \*

Under that Amendment's prohibition against governmental establishment of religion, as reinforced by the provisions of the Fourteenth Amendment, government in this country, be it state or federal, is without power to proscribe by law any particular form of prayer . . . Id. p. 430, 82 S.Ct. p. 1266.

\* \* \* \* \* \*

It has been argued that to apply the Constitution in such a way . . . is to indicate a hostility toward religion or toward prayer. Nothing, of course, could be more wrong. The history of man is inseparable from the history of religion. And it is not too much to say that since the beginning of that history many people have devoutly believed that "More things are wrought by prayer than this world dreams of." It is doubtless largely due to men who believed this that there grew up a sentiment that caused men to leave the cross-currents of officially established state religions and religious persecution in Europe and come to this country filled with the hope that they could find a place in which they could pray when they pleased to the God of their faith in the language they chose. And there were men of this same faith in the power of prayer who led the fight for adoption of our Constitution and also for our Bill of Rights with the very guarantees of religious freedom that forbid the sort of governmental activity which New York has attempted here. These men knew that the First Amendment, which tried to put an end to governmental control of religion and of prayer, was not written to destroy either. They saw rather that it was written to quiet the well-justified fears which nearly all of them felt arising out of an awareness that governments of the past had shackled men's tongues to make them speak only the religious thoughts that government wanted them to speak and to pray only to the God that government wanted them to pray to. It is neither sacrilegious nor antireligious to say that each separate government in this country should stay out of the business of writing or sanctioning official prayers and leave

that purely religious function to the people themselves and to those the people choose to look to for religious guidance. Id. p. 433–435, 82 S.Ct. p. 1268–1269.

Defendants seek to distinguish this case and others by saying that the school authorities in this case have not acted to preclude the saying of prayers, and the prayers are not said in the classroom but in assemblies held on an irregular basis. "There is no indication," they say, "that the saying of the prayers poses a clear and present danger of bringing about a substantial evil which the government has the power to prohibit."[2]

They also contend that the prayers said at assemblies are voluntary, and are protected by the free speech provision of the First Amendment, and fall within the exception mentioned in *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) by Justice Douglas and dealing with prayers said in Congress, those said at the opening of each Supreme Court session and in legislative halls, and on occasion by the President.

Aside from the fact that such statements by Justice Douglas were dicta (that is not necessary to the decision on the facts presented in that case), the actual facts of that case involved religious activity not conducted by the school but away from the school under a released time program.

Here the prayers are taking place during school assemblies on public school property.

■■ The claim of defendants that the prayer said is voluntary or that students can be excused from attending the assemblies was held to be immaterial by the U.S. Supreme Court in the *Engels* case where the Court said with respect to this same contention:

. . . and the fact that the program, as modified and approved by the state courts, does not require all pupils to recite the prayer but permits those who wish to do so to remain silent or be excused from the room, ignores the essential nature of the program's constitutional defects. Id. p. 430, 82 S.Ct. p. 1266.

And further:

The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion . . . Id. p. 430, 82 S.Ct. p. 1267.

Here, while we do not have any direct governmental compulsion, we do have the fact that the students are obliged to attend school[3] and that they did request permission to and did obtain permission from the defendant school authority to carry on their "voluntary" school prayer program in student assemblies. This is not to say that the constitutionality of such a program need turn on the fact that permission was granted and given, because the saying of public prayers alone by students in a public school, whether directly or indirectly, sanctioned by the school authorities, violates the Establishment Clause in light of *Engles* and related cases[4] and the claim that such prayers are a First Amendment free speech protected right is not valid. See *Stein v. Oshinsky,* 348 F.2d 999 (2nd Cir. 1965), cert. denied 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361 (1965).

■ Finally, as to plaintiff's request for attorneys' fees, defendants' reasons for objecting to these are found to be persuasive by this Court for the reason that plaintiff in this case, a student's mother, has not had her civil rights violated within the meaning

2. Defendant's Motion for Summary Judgment. P. 7. (Defendants, however, cited no authority for this proposition).

3. A.R.S. § 15–401 et seq.

4. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), *Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), *Everson v. Board of Education,* 330 U.S 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), *Illinois Ex Rel. McCollum v. Board of Education, supra. Zorach v. Clauson, supra. McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), *Engel v. Vitale, supra. Goodwin v. Cross Country School District # 7,* 394 F.Supp. 417 (E.D.Ark.1973).

of 42 U.S.C. § 1983, and is, therefore, not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 (1977 Supp.).

Plaintiff's motion for summary judgment is granted as prayed for, insofar as it is the Court's findings and conclusions for the reasons herein stated that the defendants' conduct here complained of by the plaintiff is a violation of the First and Fourteenth Amendments to the Constitution and pursuant to 28 U.S.C. 1343(4).

IT IS ORDERED that the defendants herein, and their agents and successors, are permanently enjoined from permitting, authorizing, or condoning the saying of public prayers by the students of the Chandler Unified School District at the student assemblies at Chandler High School, Chandler, Arizona.