Thus, constructive or resulting trusts are excluded.

With one exception, all of the courts that have dealt with statutes imposing criminal or other penalties for this kind of diversion of funds have refused to find a trust relationship. The rationale is that even if a trust is created by such a statute, the trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it. *In Re Angelle*, 610 F.2d at 1340; *In Re Thornton*, 544 F.2d at 1007. *See also Devaney v. Dloogoff (In Re Dloogoff)*, 600 F.2d 166 (8th Cir. 1979). The exception is *Allen v. Romero (In Re Romero)*, 535 F.2d 618 (10th Cir. 1976), where the Tenth Circuit construed a New Mexico statute providing for revocation of a contractor's license if funds advanced by the owners for completion of the contract were used for other purposes. The court reasoned that because the contractor had to obtain a license prior to any dealing between the contracting parties, the trust was created prior to the claim of misappropriation. 535 F.2d at 622.

■ We agree with the Fifth Circuit's criticism of *In Re Romero*. *See In Re Angelle*, 610 F.2d at 1340. The statutes relied on in *Romero*, like the California statutes relied on by appellant here, operate only after an act of wrongdoing has occurred. The California statutes do not create the basic elements of a trust. No res is defined and no fiduciary duties are spelled out. Therefore, the statutes do not create a true fiduciary relationship between the parties. For examples of statutes that do create true fiduciary relationships in the owner-contractor-subcontractor context, see the statutes referred to in *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir. 1980), and *Besroi Constr. Corp. v. Kawczynski, (In Re Kawczynski)*, 442 F.Supp. 413, 417 (W.D.N.Y.1977).

The district court's order and the bankruptcy court's judgment are AFFIRMED.

Theresa M. COLLINS,
Plaintiff-Appellant,

v.

CHANDLER UNIFIED SCHOOL DISTRICT et al., Defendants-Appellees.

Nos. 79–3297, 79–3319.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 15, 1981.

Decided May 4, 1981.

John A. Buttrick, Brown & Bain, P. A., Phoenix, Ariz., for Collins.

Thomas G. Bakker, Burch, Cracchiolo, Levie, Buyer & Wehl, P. C., Phoenix, Ariz., for Chandler, etc.

Before HUG, TANG and FARRIS, Circuit Judges.

TANG, Circuit Judge:

Theresa Collins, the parent of a student at Chandler High School, brought a section 1983 action to enjoin Chandler Unified School District (Chandler) from permitting voluntary prayer at school assemblies. The district court granted the injunction but denied Collins' request for attorneys' fees under section 1988 because her own civil rights were not violated. *Collins v. Chandler Unified School District*, 470 F.Supp. 959, 964 (D.Az.1979). Collins appeals the denial of fees and Chandler cross-appeals the grant of a permanent injunction. We affirm the district court's decision enjoining Chandler officials, but reverse and remand the attorneys' fees question.

I

*Facts*

The facts in this case are not in dispute. Chandler High School is a public school in Chandler, Arizona. Periodically during the year the Student Council plans and schedules student assemblies and the school administration adjusts the regular class schedule so that the assembly can be held within the school day. Student Council officers conduct the assemblies and students not wishing to attend may report to a supervised study hall.

During the 1977–78 and 1978–79 school years, the Chandler Student Council requested permission to open assemblies with prayer. The principal approved these requests with the knowledge and concurrence of the superintendent and the Board of Education. In planning an assembly, the Student Council allotted a certain amount of time on the agenda and selected one member of the student body to say the prayer. The selected student was free to choose the manner and words in which the prayer was delivered. On each assembly day, the Council gave the principal an agen-

da that noted whether the gathering would be opened with prayer.

In the spring of 1978, Collins, a mother of two students then enrolled at Chandler High School, sought a legal opinion about the constitutionality of this practice. Deciding such prayers violated the first amendment, Collins' attorneys attempted to convince school officials to withdraw permission and terminate the prayers. The officials indicated, however, that they intended to continue the practice unless otherwise advised by the county attorney's office or ordered by the court.

When the county attorney advised Chandler officials that prayers at student assemblies were permissible and further agreed to represent the Chandler School District, Collins filed suit in district court seeking an injunction, a declaratory judgment, and attorneys' fees and expenses. The district court granted summary judgment for Collins, finding that the conduct of the Chandler officials had violated the first and fourteenth amendments to the federal constitution; it issued an order permanently enjoining them from "permitting, authorizing, or condoning the saying of public prayers by the students" at student assemblies. 470 F.Supp. at 964. The district court denied Collins' request for attorneys' fees, however, and Collins appeals. Chandler cross-appeals.

## II

### Establishment Clause Violation

Chandler contends that granting students permission to open assemblies with prayer does not amount to a prohibited "sponsorship" of religious activity but is a reasonable accommodation of students' religious desires. In support Chandler relies on the four major Supreme Court cases on prayer or religious instruction in public schools for the proposition that the benevolent neutrality required of state officials by the Free Exercise and Establishment Clauses can be achieved by allowing voluntary, student initiated religious activity. *See School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844

(1963) (daily Bible reading and class recitation of prayer violates first amendment notwithstanding that students could be excused); *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (daily denominationally neutral class recitation of prayer violates first amendment notwithstanding provision to excuse children); *Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (releasing students to attend religious activities off school grounds constitutionally valid); *McCollum v. Board of Education*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948) (religious instruction conducted by clergy in classrooms during school hours violates first amendment notwithstanding ability to attend secular activities instead).

■ Collins correctly argues, however, that Chandler's permission for students to conduct prayers cannot be saved from constitutional attack merely because attendance at school assemblies is voluntary. As the Supreme Court stated in *Engel*, "[n]either the fact that the prayer may be denominationally neutral nor the fact that its observance on the part of students is voluntary can serve to free it from the limitations of the Establishment Clause ...." 370 U.S. at 430, 82 S.Ct. at 1266. The court reiterated this principle in *Schempp* by citing *Engel* and stating that the religious exercises in question were not "mitigated by the fact that individual students may absent themselves upon parental request, for that fact furnishes no defense to a claim of unconstitutionality under the Establishment Clause." 374 U.S. at 224–25, 83 S.Ct. at 1572–73.

Moreover, these cases support no meaningful distinction between school authorities actually organizing the religious activity and officials merely "permitting" students to direct the exercises. In *Goodwin v. Cross County School District No. 7*, 394 F.Supp. 417 (E.D.Ark.1973), the court directly addressed this question. There, as in the present case, a high school principal, with the concurrence of the superintendent, granted permission for the Student Council

to recite prayers and Bible verses of their choosing during school hours. In holding the practice a constitutional violation, the court rejected "the contention that the establishment clause, as it interlocks with the free exercise clause, does not require the administration to deny the use of school facilities to the students who shall voluntarily and upon their own initiative, perform such religious exercises each day." 394 F.Supp. at 424. The court was "not persuaded that the responsibility of the School Board may be treated so lightly as the School Board insists, which amounts to a 'Hands-Off' attitude." *Id.*

■ Similarly, in *Brandon v. Board of Education of Guilderland Central School District*, 635 F.2d 971 (2d Cir. 1980), the Second Circuit recently upheld a school board's refusal to allow students to hold voluntary communal prayer meetings in a classroom immediately prior to commencement of the school day. In finding that a grant of such permission would have violated the Establishment Clause, the court applied the three part test enunciated in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). That test establishes that a state regulation does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion. *Stone v. Graham*, —— U.S. ——, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980); *Committee for Public Education & Religious Liberty v. Regan*, 444 U.S. 646, 653, 100 S.Ct. 840, 846, 63 L.Ed.2d 94 (1980); *Brandon*, 635 F.2d at 978. We adopt the *Brandon* court's approach and reasoning.

Applying the *Lemon v. Kurtzman* test here, the invocation of assemblies with prayer has no apparent secular purpose and Chandler suggests none. *Cf. Brandon*, 635 F.2d at 978 (neutral policy granting all groups access to school facilities reflects valid secular purpose of encouraging extracurricular activities). Second, the primary effect of such prayer appears to advance religion for the reasons given in *Brandon*.

Citing *McCollum, Schempp* and *Engel*, and distinguishing *Zorach*, the court stated:

Our nation's elementary and secondary schools play a unique role in transmitting basic and fundamental values to our youth. To an impressionable student, even the mere appearance of secular involvement in religious activities might indicate that the state has placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit.

*Brandon*, 635 F.2d at 978.

Such secular involvement in religious activities in the institutionally coercive setting of primary and secondary schools, then, is alone sufficient to satisfy this prong of the *Lemon v. Kurtzman* test. Even so, the activity in our case goes beyond symbolic inference. The Chandler students must either listen to a prayer chosen by a select group of students or forego the opportunity to attend a major school function. It is difficult to conceive how this choice would not coerce a student wishing to be part of the social mainstream and, thus, advance one group's religious beliefs.

Finally, in *Brandon* the court found excessive entanglement despite the fact that the prayer meetings were planned and conducted by students. The court reasoned that school officials had a duty to supervise all activities on campus and monitor the meetings to guarantee that participation would remain voluntary. *Id.* at 979; *see Goodwin*, 394 F.Supp. at 424. Likewise, in the present case the school assemblies required surveillance by school officials and, unlike the *Brandon* situation, probably involved attendance by faculty or administrators needing to supervise the obviously large gathering of students. Thus, under *Brandon* and *Lemon v. Kurtzman*, we hold that Chandler officials violated the Establishment Clause by granting permission for prayers during school hours.

■ Chandler argues, however, that denial of permission to open assemblies with prayer would violate the students' rights to free speech. But, as the *Brandon* court persuasively explains, although students

have first amendment rights to political speech in public schools, *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), "[w]hen the explicit Establishment Clause proscription against prayer in the public schools is considered, the protections of political and religious speech are inapposite." 635 F.2d at 980 (citations omitted).

Chandler last urges that under *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (free exercise rights violated by denial of benefits to Seventh Day Adventists whose religion required observance of their sabbath), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (insufficient state interest in compelling Amish children to attend school against religious tenets), denial of the right to begin assemblies with prayer would violate the students' rights to the free exercise of their religion. Again the *Brandon* court fully analyzes this argument and properly dismisses it. There, as here, the students wishing to pray during the day were not presented an absolute dilemma as were the individuals in *Sherbert* and *Yoder*. Unlike isolated members of the military forces, or public university students residing on campus, these high school students "are free to worship together as they please before and after the school day and on weekends in a church or any other suitable place." *Id.* at 977, *citing Schempp*, 374 U.S. at 299, 83 S.Ct. at 1612. Thus, as the *Brandon* court concludes, "the effect of the school's actions ... is hardly analogous to the coercive restraints on religious observation imposed by state action in *Sherbert* or *Yoder*." *Id.*

## II

### Attorneys' Fees

Collins contends that the district court improperly interpreted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, to preclude an award of attorneys' fees to parent-plaintiffs who prevail against school authorities found to violate 42 U.S.C. § 1983. Chandler, on the other hand, argues that even though Collins had standing to sue, as a parent, Collins sought to vindicate only her child's civil rights and thus cannot claim fees.

Section 1988 provides that "[i]n any action or proceeding to enforce a provision of section [ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "Congress plainly intended that successful plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Sethy v. Alameda County Water District*, 602 F.2d 894, 897 (9th Cir. 1979), *cert. denied* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *see Aho v. Clark*, 608 F.2d 365, 367 (9th Cir. 1979); *Buxton v. Patel*, 595 F.2d 1182, 1184 (9th Cir. 1979). "Implicit in this expression of congressional intent is a requirement that a court which denies an award of attorney's fees must issue findings of fact and conclusions of law identifying the 'special circumstances' and explaining why they render an award unjust." *Sethy*, 602 F.2d at 897.

In this case, the district court simply held:

Finally, as to plaintiff's request for attorneys' fees, defendants' reasons for objecting to these are found to be persuasive by this Court for the reason that plaintiff in this case, a student's mother, has not had her civil rights violated within the meaning of 42 U.S.C. § 1983, and is, therefore, not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 (1977 Supp.).

470 F.Supp. at 963–64.

The question, then, is whether Collins' status as a parent-litigant is a special circumstance sufficient to render an award unjust.

As Collins argues, the plain language of section 1988 provides no exception based on a litigant's status as a parent. The statute simply provides that in *any* action to enforce section 1983 rights the court may award fees to *the* prevailing party. The language "is broad and unequivocal", *Den-*

nis v. Chang, 611 F.2d 1302, 1305 (9th Cir. 1980), and must be liberally construed to achieve Congress' purpose "to encourage compliance with and enforcement of the civil rights laws." Id. at 1306; see Leeds v. Watson, 630 F.2d 674, 677 (9th Cir. 1980); Mid-Hudson Legal Services, Inc. G & U, Inc., 578 F.2d 34, 37 (2d Cir. 1978).

Moreover, the practical effect of the district court's interpretation of section 1988 would, as Collins contends, deny fees to entire classes of prevailing plaintiffs. Nothing in the legislative history indicates Congress intended such a consequence. See S.Rep. No. 94–1011, 94th Cong., 2d Sess., reprinted in [1976] U.S. Code Cong. & Ad. News 5908. To the contrary, Congress was surely aware that parents frequently sue in their own right to enjoin officials of their children's schools from violating section 1983 rights, yet it created no express exception to an award of fees. See Zorach v. Clauson, 343 U.S. at 309, 72 S.Ct. at 681; Adler v. Board of Education, 342 U.S. 485, 503, 72 S.Ct. 380, 390, 96 L.Ed. 517 (1952; Frankfurter, J. dissenting); McCollum v. Board of Education, 333 U.S. at 204, 68 S.Ct. at 462 (all cases in which a parent alone brought suit); cf. Dennis, 611 F.2d at 1305–06 (holding section 1988 fees available to legal services organizations, by arguing, inter alia, that Congress knew such organizations frequently were involved and failed to expressly exempt them.)[1] Therefore, we hold that an award of legal fees in this case

would not violate the letter or spirit of section 1988. We remand to the district court to identify any other "special circumstances" and, if none are present, to determine a reasonable fee based upon such factors as those enumerated in Fountila v. Carter, 571 F.2d 487, 496 (9th Cir. 1978).

Affirmed in Part; Reversed and Remanded in Part.

---

1. Collins cites Mid-Hudson Legal Services v. G & U, Inc., 578 F.2d 34 (2d Cir. 1978), as a case in which a section 1988 award was made to a party seeking to vindicate the rights of others. In that case, however, the court held fees appropriate when, in addition to vindicating their own free speech and association rights, plaintiffs furthered a more general federal policy of assisting migrant workers.

In any event, it appears that, as a parent, Collins sued to vindicate a direct, personal right. For example, in Adler v. Board of Education, 342 U.S. 485, 503, 72 S.Ct. 380, 390, 96 L.Ed. 517 (1952), Justice Frankfurter, dissenting on other grounds, stated:

An apt contrast is provided by [McCollum] ... where a parent did present an individualized claim of his own that was direct and palpable. There the parent alleged that Illinois imposed restrictions on the child's free

exercise of faith and thereby on the parent's. The basis of jurisdiction in the McCollum case was not at all a parental right to challenge in the courts—or at least in this Court—educational provisions in general. The closely defined encroachment of the particular arrangement on a constitutionally protected right of the child, and of the parent's right in the child, furnished the basis for our review (emphasis added).

See also School District of Abington Township v. Schempp, 374 U.S. at 224 n. 9, 83 S.Ct. at 1572 n. 9 ("parties here are school children and their parents, who are directly affected" by challenged religious exercises); Lee v. Nyquist, 318 F.Supp. 710, 713 (W.D.N.Y.1970), aff'd, 402 U.S. 935, 91 S.Ct. 1618, 29 L.Ed.2d 105 (1971) (interest of parents, "for themselves and their children", is "both personal and direct").