Richard GARNETT, by and through his next friend, Peggy SMITH; Scott Germino; Robert Ryan, by and through his next friend, Jack Ryan; Richard Tracy, by and through his next friend, Michael Tracy, Plaintiffs/Appellants,

v.

RENTON SCHOOL DISTRICT NO. 403; Robert L. Anderson, in his official capacity; Brian Barker, in his official capacity; John G. Dubois, in his official capacity; Marcia Holland, in her official capacity; Donald Jacobson, in his official capacity; Gary F. Kohlwes, in his official capacity; and Margarita Prentice, in her official capacity, Defendants/Appellees.

United States of America,
Plaintiff–Intervenor/Appellant.

No. 88–3552.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided Jan. 17, 1989.

As Amended March 3, 1989 and
May 15, 1989.

Steven T. McFarland, William H. Ellis, Jr., Michael E. Ritchie, Ellis & Li, Seattle, Wash., Robert Hale, Families for Responsible Educational Environment, for plaintiffs/appellants Richard Garnett, et al.

I. Franklin Hunsaker, Scott M. Stickney, Christopher A. Rycewicz, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendants/appellees Renton School District No. 403, et al.

John R. Bolton, Asst. Atty. Gen., Gene S. Anderson, U.S. Atty., Brant M. Laue, Sp. Asst. to the Atty. Gen., Anthony J. Steinmeyer, U.S. Dept. of Justice, Washington, D.C., for amicus curiae U.S.

Marc D. Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, Wash., for amicus curiae American Civ. Liberties Union of Washington Foundation.

R. Broh Landsman, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for amici curiae Anti–Defamation League of B'Nai B'rith, the American Jewish Congress, and Americans for Religious Liberty.

Martin L. Ziontz, Bassett & Morrison, Seattle, Wash., for amici curiae American Jewish Committee and Church Council of Greater Seattle.

Before FARRIS and POOLE, Circuit Judges, and KELLEHER,* District Judge.

FARRIS, Circuit Judge:

Richard Garnett and other Lindbergh High School students sought a district court order requiring the Renton School District to allow their student religious group to meet in a high school classroom prior to the start of the school day. The students appeal the district court's orders denying their motion for a preliminary injunction and entering judgment for the school district on the merits. The students claim: 1) the First Amendment requires that the school district permit their group to meet; and 2) the Equal Access Act requires that the school district permit their group's meetings.

## FACTS

Lindbergh High School is a public secondary school in the Renton School District. The district makes classrooms available during noninstructional time for use by students participating in approved "co-curricular" activities. The district's board of directors and superintendent determine whether to approve an activity based on District Policy 6470 which provides:

[t]he criteria to be used for approving co-curricular activities should include but not be limited to:

1. the purposes and/or objectives shall be an extension of a specific program or course offering,

2. the activity shall be acceptable to the community,

3. the activity should have carry-over values for lifetime activities,

4. the group shall be supervised by a qualified employee,

5. the cost of the activity must not be prohibitive to student or District,

6. the activity must comply with Title IX requirements,

7. the activity must take place on school premises unless approved in advance by the school principal, and

8. the activity must not be secretive in nature.

Policy 6470 also states that the district "does not offer a limited open forum."

Garnett and others asked Lindbergh's principal and the school district for permission to use a Lindbergh classroom for weekday morning meetings of their non-denominational Christian student group. The group wished to discuss religious and moral issues, read the Bible, and pray. The principal and the district denied the group's

---

* Honorable Robert J. Kelleher, Senior United States District Judge, for the Central District of California, sitting by designation.

requests because the club was not curriculum related and because allowing the proposed meetings would violate the Establishment Clause.

Members of the Christian group brought suit in U.S. District Court and moved for a preliminary injunction requiring the district to allow them to use a classroom for meetings. The district court denied the students' motion for a preliminary injunction and entered judgment in favor of the school district.

## STANDARD OF REVIEW

This appeal involves questions of law which are reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Application of the Equal Access Act involves a "mixed question" of application of law to facts. The district court's application of the Act is not the sort of "essentially factual" inquiry which warrants application of the deferential clearly erroneous standard to a "mixed question." *Id.* at 1202 (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). Rather, application of the Act requires "the consideration of legal principles," *id.* at 1204, of statutory interpretation and constitutional law, and is therefore subject to the general rule that "mixed questions will be reviewed independently." *Id.* The district court's findings concerning underlying historical facts, however, are reviewed for clear error. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

## I. THE FIRST AMENDMENT

### A. The Establishment Clause

The Establishment Clause of the First Amendment, applied to the states through the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), prohibits state action "respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has applied the three-part *"Lemon* test" to determine whether state action comports

with the Establishment Clause. First, the action must have a secular purpose. Second, the action's primary effect must be one that neither advances nor inhibits religion. Third, the action must not result in excessive entanglement of government with religion. *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)).

### 1. Secular Purpose

■ Allowing the requested meeting of this particular student religious group in a public high school classroom at a time closely associated with the school day would violate the Establishment Clause. We recognize that such an action might arguably have the secular purpose of allowing equal access to school facilities. *See Brandon v. Board of Educ. of Guilderland Central School Dist.*, 635 F.2d 971, 978–79 (2d Cir.1980). But it would also violate the Establishment Clause under both the second and third parts of the *Lemon* test. It would have the primary effect of advancing religion, and it would foster government entanglement with religion.

### 2. Primary Effect of Advancing or Inhibiting Religion

■ The second part of the *Lemon* test evaluates whether state action merely neutrally accommodates religion or unconstitutionally sponsors religion. Government may accommodate religious practices to avoid impinging on the right to freely exercise religious beliefs. *Brandon*, 635 F.2d at 975 (2d Cir.1980). Thus, government need not withhold generally available benefits from a religious organization simply because the organization is religious. *Roemer v. Board of Public Works*, 426 U.S. 736, 746–47, 96 S.Ct. 2337, 2344–45, 49 L.Ed.2d 179 (1976).

■ Government may not, however, take actions which even appear to sponsor religion. Thus, even insignificant amounts of direct aid to religious groups violate the Establishment Clause. In *Everson v.*

*Board of Educ.*, 330 U.S. 1, 16, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947), the Supreme Court held: "[no] tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion." Nowhere has the Supreme Court been more vigilant in prohibiting the appearance of state sponsorship of religious activities than in public elementary and secondary schools.

The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure.... "[t]he public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools."

*Edwards v. Aguillard*, 107 S.Ct. at 2577–78 (citations omitted).

Permitting this student religious group to meet in a public high school just before the start of classes would impermissibly advance rather than neutrally accommodate religion. In *Illinois ex rel. McCollum v. Board of Educ.*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), the Supreme Court held that a school district impermissibly advanced religion by allowing religious instructors to provide religious education to students on a voluntary basis during the school day. The Court held: "This is beyond all question a utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith. And it falls squarely under the ban of the First Amendment." *Id.* at 210, 68 S.Ct. at 464. This case presents substantially the same issues as *McCollum.* Although the religious activity proposed would take place before formal instruction begins, it would occur in a tax-supported classroom at a time when most students must be at school. The problems addressed in *McCollum* are equally present.

Other circuits considering use of school facilities for religious meetings have held

such use to unconstitutionally advance religion. In *Brandon v. Board of Educ.*, 635 F.2d 971 (2d Cir.1980), the court held that permitting prayer meetings in a public high school, even under a neutral equal access policy, would impermissibly advance religion. The court stressed the appearance of school sponsorship that would arise:

Our nation's elementary and secondary schools play a unique role in transmitting basic and fundamental values to our youth. To an impressionable student, even the mere appearance of secular involvement in religious activities might indicate that the state has placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit.

*Id.* at 978. *See also Bell v. Little Axe Indep. School Dist.*, 766 F.2d 1391 (10th Cir.1985); *Nartowicz v. Clayton County School Dist.*, 736 F.2d 646 (11th Cir.1984); *Bender v. Williamsport Area School Dist.*, 741 F.2d 538 (3d Cir.1984), *vacated on other grounds*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Lubbock Civil Liberties Union v. Lubbock Indep. School Dist.*, 669 F.2d 1038 (5th Cir.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983) (each holding that allowing student religious meetings during noninstructional time in a public secondary or elementary school would constitute an impermissible advancement of religion). We agree.

*Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), held that permitting a student religious group to meet on a university campus which had a policy of allowing meetings of a wide range of student groups would not impermissibly advance religion. This case is different from *Widmar*. As the Supreme Court recently noted, "[t]he potential for undue influence is far less significant with regard to college students who voluntarily enroll in courses [than with regard to students at public high schools]. 'This distinction warrants a difference in constitutional results.'" *Edwards v. Aguillard*, 107 S.Ct. at 2577 n. 5 (quoting *School Dist. of Abington Township v. Schempp*, 374 U.S. 203,

253, 83 S.Ct. 1560, 1587, 10 L.Ed.2d 844 (Brennan, J. concurring)).

Unlike university students, high school students are required to attend school. The instructional format at a high school is far more structured than at a university. High school students are less mature and more impressionable than university students. Teachers at high schools, unlike college professors, are both educators and authority figures. The same considerations that mandate special vigilance in preventing religious establishments in public schools—the impressionability of young students, compulsory attendance laws that make students a captive audience, and the role of public schools in inculcating democratic ideals—distinguish public secondary schools from public universities. The religious activity proposed in this case, which would take place at a time closely associated with a highly structured school day, would be far more likely to appear to enjoy school sponsorship than a group on a college campus. In addition, all student activities in the Renton School District, unlike those in *Widmar*, are district approved and supervised by district employees. Since *Widmar*, other circuit courts which have considered voluntary prayer groups in public elementary and secondary schools have recognized the difference between universities and public schools. They have uniformly held that public school prayer groups violate the Establishment Clause. *See Lubbock*, 669 F.2d at 1045–46; *Bender*, 741 F.2d at 552; *Bell*, 766 F.2d at 1404–05.

### 3. Entanglement

If the government must engage in continuing supervision of religious activity, church and state become excessively entangled. *Brandon*, 635 F.2d at 979; *Collins v. Chandler Unified School Dist.*, 644 F.2d 759, 762 (9th Cir.), *cert. denied*, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981). Both *Brandon* and *Collins* held that faculty supervision of religious activities at a public school creates excessive entanglement of government and religion. In this case, because the district is responsible for student safety and discipline, Lindbergh teachers must supervise all student activities, religious or otherwise, taking place at the school. This necessary supervision could lead to teacher interference with or advocacy of religious activities. Although *Widmar* held that allowing a religious group to meet on a university campus did not present entanglement concerns, the student groups allowed to meet in *Widmar*, unlike those in the present case, did not need supervision or monitoring by government employees.

### B. Student Free Speech Rights

■ The Renton School District's refusal to allow a student religious group to meet on campus does not violate the free speech clause of the First Amendment.

■ Lindbergh High School is not a First Amendment limited public forum. In *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 568, 98 L.Ed.2d 592 (1988), the Supreme Court held:

> school facilities may be deemed to be public forums only if school authorities have "by policy or by practice" opened those facilities "for indiscriminate use by the general public," ... or by some segment of the public, such as student organizations.... "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 802 [105 S.Ct. 3439, 3449, 87 L.Ed.2d 567] (1985).

The Renton School District has not by either policy or practice opened its classrooms for indiscriminate use. District Policy 6470 explicitly states that "[t]he Renton School District does not offer a limited open forum." The district's policy is to allow use of its facilities by student groups only after those groups are approved according to narrowly circumscribed guidelines. The district's practice does not vary from its policy. Student groups are allowed to meet in high school classrooms only after express district approval. The school district has not intentionally opened

its classrooms for public discourse by students and student groups.

■ Because the district has not created a public forum, it may limit student expression in any reasonable way. *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 47, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983)). Policy 6470 is not unreasonable on its face. It does not discriminate on an impermissible basis, nor is it irrational. Nor do we find that the district has been disingenuous in its application of the policy. Clubs which are an extension of the courses and programs of the district are permitted to meet. Clubs, such as the religious group in this case, which have nothing to do with the school district's educational mission are not granted district approval.

The district's exclusion of religious groups from its cocurricular program is not only reasonable, but also constitutionally required. The district *must* exclude organized religious speech because use of public school facilities for religious purposes violates the Establishment Clause. "[W]hen the explicit Establishment Clause proscription against prayer in the public schools is considered, the protections of political and religious speech are inapposite." *Collins,* 644 F.2d at 763 (quoting *Brandon,* 635 F.2d at 980).

The holding in *Widmar v. Vincent* is not to the contrary. *Widmar* held that the free speech clause prohibits exclusion of a religious group from a public forum on a university campus. The differences between high schools and universities distinguish this case from *Widmar.* Even were we to accept the dubious proposition that the holding in *Widmar* applies to public high schools, *Widmar* would not apply here. The classrooms at Lindbergh High School, unlike the facilities considered in *Widmar,* are not a public forum for student expression.

*Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) is also inapplicable. The *Hazelwood* Court explained:

The question whether the First Amendment requires a school to tolerate particular student speech—the question that we addressed in *Tinker*—is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech.

*Hazelwood,* 108 S.Ct. at 569. Lindbergh has not prohibited students from discussing religion at school. Rather, the school district has refused to grant a group the use of its classrooms and other resources. *Tinker* is also inapplicable because the Establishment Clause concerns present in this case were not present in *Tinker.*

## II. APPLICABILITY OF THE EQUAL ACCESS ACT

The Equal Access Act, 20 U.S.C. § 4071, makes it unlawful for

any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or to discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).

■ The Act's requirements only apply to high schools which have a limited open forum. Because Lindbergh does not have a limited open forum as defined by the Act, the Act's requirements do not apply. For the Act's purposes, a high school has a "limited open forum" when it "grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." 20 U.S.C. § 4071(b). The Act does not define "noncurriculum related group."

In evaluating whether the Renton School District allows "noncurriculum related groups" to meet at Lindbergh, we respect the district's determinations about which activities are curriculum related. Complete de novo review of every school district decision as to what is and what is not curriculum related would invite litigation from every student group denied a classroom for

one reason or another, and is not necessary to effectuate the goals of the Act. Courts have always afforded school districts broad discretion in the management of school affairs, limited, of course, by any applicable constitutional or statutory principles. *See, e.g., Hazelwood,* 108 S.Ct. at 571; *Board of Educ. v. Rowley,* 458 U.S. 176 at 207–08, 102 S.Ct. 3034, 3051–52, 73 L.Ed.2d 690 (1982). The Equal Access Act does not expressly depart from this principle of deference to the judgment of local school officials. Congress must, therefore, be understood to have legislated in light of this principle. The legislative history supports this interpretation. During debate, Senator Hatfield, a sponsor of the legislation, made clear that the Act in no way seeks to limit a school district's authority to determine where the line is to be drawn between curriculum-related activities and noncurriculum related activities. 130 Cong.Rec. S8342 (Daily ed. June 27, 1984).

While we accord some deference to a school district's determination about whether a group is curriculum related, we cannot completely defer to a school district's determination. Complete deference would render the Act meaningless because school boards could circumvent the Act's requirements simply by asserting that all student groups are curriculum related. As the district court correctly recognized, " 'a limited open forum should be triggered by what a school does, not by what it says.' " *Garnett v. Renton School Dist. No. 403,* 675 F.Supp. 1268, 1273 (W.D.Wash.1987) (quoting 130 Cong.Rec. S8341 (daily ed., June 27, 1984) (statement of Sen. Leahy)).

After independently reviewing the record, we agree with the district court's conclusion that all clubs at Lindbergh are related to the school's curriculum. The activities allowed to meet at Lindbergh are supervised by faculty advisers and are so closely related to course work or are so integral a part of the traditional and official school programs that they cannot reasonably be termed "noncurriculum related." None of Lindbergh's clubs is student initiated or student directed. All of the clubs are sponsored by and substantially directed by the school through a faculty advisor or a teacher of a related course. Lindbergh has not merely deemed all its clubs to be curriculum related. Rather, Lindbergh and the school district have considered instructional goals, and, in accordance with a written policy, made the clubs a part of Lindbergh's curriculum.

Lindbergh does not allow "noncurriculum related" groups to meet on its premises during noninstructional time; the Equal Access Act does not apply. Because the Equal Access Act does not apply to this case, we need not decide whether the Act violates the Constitution.

CONCLUSION

Allowing a student religious group to hold meetings in a public secondary school classroom at a time closely associated with the school day would violate the Establishment Clause. The school district's refusal to approve a student religious group as a district activity is, therefore, not only reasonable, but required. Because Lindbergh High School does not have a "limited open forum" as defined by the Equal Access Act, the Act's requirements do not apply.

AFFIRMED.