**Theodore JAFFE and Warren Havens, Plaintiffs-Appellees,**

v.

**Doris ALEXIS, Director of the Department of Motor Vehicles, an agency of the State of California, Defendant-Appellant.**

**No. 80–4022.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1981.

Decided Oct. 23, 1981.

Gordon Zane, San Francisco, Cal., for defendant-appellant.

Larry J. Roberts, Fisher and Moest, Los Angeles, Cal., argued, for plaintiffs-appellees; David Grosz, Fisher and Moest, Los Angeles, Fred H. Altshuler, Stephen P. Berzon, Altshuler & Berzon, San Francisco, Cal., on brief.

Before PREGERSON, POOLE and NORRIS, Circuit Judges.

POOLE, Circuit Judge:

This is an appeal from the judgment of the United States District Court for the Northern District of California permanently enjoining the California Department of Motor Vehicles (Department) from enforcing its administrative policy prohibiting all speech and fund solicitation activities con-

ducted by religious groups on Department property. Appellees, Theodore Jaffe and Warren Havens, are members of the International Society for Krishna Consciousness (Krishnas), a religious organization. They brought this action pursuant to 42 U.S.C. § 1983 against Doris Alexis, Director of the Department. We affirm the judgment.

## I

■ As Krishnas, appellees are spiritually motivated to perform a religious ritual known as "Sankirtan." That ritual consists of the dissemination of religious tracts and small gifts to the public and the solicitation of funds to support the religion. These activities are undoubtedly constitutionally protected speech, cloaked with the protections of the First Amendment. *See Heffron v. International Society for Krishna Consciousness,* ── U.S. ──, ──, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). Appellees brought this suit to gain the right to perform Sankirtan on the exterior walkways and parking lots of Department offices.

Appellees' complaint challenges the constitutionality of California Department of Motor Vehicles Administrative Policy Manual § 7.113. That section permitted solicitation of signatures and distribution of handbills on the exterior grounds of Department facilities "unless the activity interferes with the Department's operations to a major degree." Solicitation of funds or political assessments were prohibited by this section.

After this action was filed, the Department revised its policy. Alexis stated in her affidavit that the present policy is "to prohibit the advocacy of religious doctrines entirely" on Department property, but to permit other speech activities to the extent they do not interfere with the conduct of business. Although the record does not reveal a formal modification of § 7.113, it establishes that the present policy is absolutely to exclude religious advocacy, solicitation, or speech, and that this policy would be enforced were it not for the district court's injunction. Purported justification for this selective exclusion of religious speech lies in the Department's claim that allowance of religious speech on its property would violate the Establishment Clause of the First Amendment, made applicable to the states by the Fourteenth Amendment. On appeal it is suggested that equivalent provisions of California's Constitution necessitate the exclusion.[1]

At the district court's suggestion, the case was submitted for final determination at the conclusion of the hearing on appellees' motion for a preliminary injunction. The court held that a neutral policy permitting all groups to use Department property on an equal basis would not offend the Establishment Clause. In light of this, the court concluded that the Department's discrimination against speech of a religious nature was constitutionally impermissible. We affirm.

## II

■ Sankirtan is protected First Amendment speech. *Heffron v. International Society for Krishna Consciousness, supra,* 101 S.Ct. at 2563. Appellees seek to engage in this speech activity at a place the Department has made generally available to the public for speech activities.[2] It is well-recognized that the Equal Protection

---

1. We are directed particularly to Article I, section 4 and Article XVI, section 5 of California's Constitution. Section 4 provides in pertinent part: "The Legislature shall make no law respecting an establishment of religion ...." Section 5 prohibits "appropriation, or pay from any public fund whatever, or grant [of] anything to or in aid of any religious sect, church, creed, or sectarian purpose ...."

2. We need not decide in this case whether the Department properties used by the public for speech activities are "public forums" within the meaning of First Amendment jurisprudence. Here, the Department's restriction is based on the religious content of appellees' message. When the content of the speaker's message forms the basis for its selective regulation, public forum analysis is no longer crucial; the government must still justify the restriction and the justification "must be scrutinized more carefully to ensure that communication has not been prohibited 'merely because public officials disapprove of the speaker's views.'" *U. S. Postal Service v. Council of Greenburgh,* ── U.S. ──, ──, 101 S.Ct.

Clause of the Fourteenth Amendment and the First Amendment restrict the power of the state to discriminate between speakers with respect to the ideas, subject matter or content of messages in forums which have been thus opened. *Police Department of Chicago v. Mosely*, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). When the state attempts such a restriction, "the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown*, 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980); *accord, Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). It is the state's burden to justify content-based discrimination. *See Carey v. Brown, supra*, 447 U.S. at 461–62, 100 S.Ct. at 2290. Unless resting upon substantial state interests, the discrimination may not continue.

Throughout this litigation, the Department has attempted to justify its selective exclusion of religious speech by arguing that the Establishment Clause would be offended were religious speech permitted along with all other messages. On appeal, the Department suggests that portions of California's Constitution prohibit religious speech on state property otherwise open to the public. We do not reach the Department's California constitutional claims because they were not presented to the district court. As to the federal constitutional claim, the Establishment Clause does not prevent equal access to Department property by religious speakers. The discrimination is therefore unjustified.

### III

■ A state regulation or practice affecting religion will not offend the Establish-

ment Clause of the First Amendment if: (A) it has a secular purpose; (B) its principal effect is one which neither advances nor inhibits religion; (C) it does not foster excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).[3]

#### A

The Department argues that a policy permitting religious speech on its property would serve no secular purpose. Yet that argument misstates the proper inquiry. The issue is not whether a policy permitting religious speech would serve a secular purpose, because that is not the policy the Department opposes. Rather, the issue is whether a policy of equal access, without restrictions based on speech content, would serve a secular purpose. The essential and secular objective of the First Amendment is to assure an exchange of ideas unfettered by state screening and selection. *See, e. g., Consolidated Edison Co. v. Public Service Comm'n., supra*, 440 U.S. at 537, 100 S.Ct. at 2333; *Brandon v. Board of Education of Guilderland Central School District*, 635 F.2d 971, 978 (2d Cir. 1980), *cert. pending*, No. 80–1396 (U.S. February 17, 1981), (neutral policy allowing all groups equal access to school facilities serves secular purpose).

#### B

■ The Department argues that a neutral policy of equal access would impermissibly advance religion in violation of the second of *Lemon*'s constitutional tests. The argument has three essential components.[4]

■ It is suggested that the practice of Sankirtan on Department property would

2676, 2686, 69 L.Ed.2d 517 (1981); *Consolidated Edison Co. v. Public Service Comm'n.*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

**3.** The Department does not contend that permitting religious speech on its property would cause government entanglement with religion.

**4.** The Department also suggested that Sankirtan is a religious practice, rather than traditional speech, and therefore entitled to less First Amendment protection. This argument is untenable in light of *Heffron v. International Society for Krishna Consciousness, supra*, 101 S.Ct. at 2563.

connote state approval of the Krishnas and their activities, thereby advancing religious doctrine. An absolute bar to religious speech cannot be justified by this nebulous, undocumented and wholly speculative prospect that someone might infer state approval of the Krishnas. To accept the Department's argument that the Establishment Clause would be offended by this feared imprimatur would require that we sweep all religious speech from under the protection of the Speech Clause of the First Amendment. Whenever a religious speaker uses state property as a forum, there is a danger that someone might conclude that the state has approved of the speaker's religious message. If apprehension of such a danger were enough to violate the Establishment Clause, no religious speaker could ever appear on state property. Yet such a result would be inconsistent with the many decisions of the Supreme Court holding that religious speech enjoys protection under the Speech Clause of the First Amendment. *See, e. g., Heffron v. International Society for Krishna Consciousness, supra; Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

We believe that the Department's fears that the public will attribute the Krishnas' views to the State of California are not only unsubstantiated in the record, but have no basis in reality. As the Supreme Court observed in *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 98, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980): "The views expressed by members of the public in passing out pamphlets or seeking signatures for a petition [at a shopping center] will not likely be identified with those of the owner [of the shopping center]." Any anxieties the Department has can easily be allayed by posting signs in the area where the Krishnas congregate disavowing the state's association with Sankirtan, and explaining the Krishnas' constitutional right to express their views. *See id.*

A derivative of this argument is the Department's claim that repeated, as distinguished from infrequent, use of its property by religious groups would impermissibly advance religion. The record does not permit any inference as to the frequency with which religious groups will appear. Without establishing the premise of the argument, we decline to speculate about its constitutional significance. We are particularly unwilling to do so when the argument, based on the Department's brief, is little more than the claim that regularity of use makes some unarticulated doctrinal difference.

The third aspect of the Department's claim that religious speech on its property would impermissibly advance religion is the contention that the public expenditures necessary to permit the speech would benefit the faith. Again, there is nothing in the record which suggests that *any* added cost to the Department would be associated with a policy which does not discriminate against religious groups. We decline to sacrifice First Amendment rights in a flurry of speculation.

### IV

■ For the first time on appeal, the Department argues that Article I, section 1, and Article XVI, section 5 of California's Constitution would be offended if appellees were permitted equal access to Department property for speech activities. Because this argument was not presented to the district court, we decline to consider it. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).[5]

### V

Justifications offered for the Department's discrimination against religious speech do not pass constitutional muster. Such speech may not therefore be barred. The district court so held and we are in full accord.

*AFFIRMED.*

---

**5.** The Department has offered no reason why we should dispense with the general rule that

an appellate court will not consider arguments which were not presented to the district court.