41 F.3d 447
 63 USLW 2328, 95 Ed. Law Rep. 892
 Phyllis Wright HARRIS, on her own behalf and on behalf of
her three children; Beverly Harris Butler,
formerly Beverly Harris; Samuel Harris,
Plaintiffs-Appellants,
v.
JOINT SCHOOL DISTRICT NO. 241; Board of Trustees of
District No. 241; Trent Woods, Chairperson of
Board; Al Arnzen, Superintendent,
Defendants-Appellees,
v.
CITIZENS PRESERVING AMERICA'S HERITAGE, INC., an Idaho
Corporation; et al., Defendants-Intervenors-Appellees.
 No. 93-35839.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1994.
Decided Nov. 18, 1994.
 
 Stephen L. Pevar, American Civ. Liberties Union, Denver, CO, for plaintiffs-appellants.
 James B. Lynch and Kirtlan G. Naylor, Imhoff & Lynch, Boise, ID, for defendants-appellees.
 Stanley D. Crow, Boise, ID, for defendants-intervenors-appellees.
 Jay Alan Sekulow, American Center for Law and Justice, Washington, DC, for amicus Student Coalition for Free Speech.
 Marc D. Stern, American Jewish Congress, New York City, for amicus American Jewish Congress, et al.
 Appeal from the United States District Court for the District of Idaho.
 Before: WRIGHT, WIGGINS and THOMPSON, Circuit Judges.
 Opinion by Judge WIGGINS; Partial Concurrence and Partial Dissent by Judge WRIGHT.
 WIGGINS, Circuit Judge:
 
 OVERVIEW
 
 1
 In this case, students and a parent of students challenge the constitutionality of the inclusion of prayer in the Grangeville High School graduation ceremony held yearly in Grangeville, Idaho. The plaintiffs claim that the prayers violate Article IX, sections 5 and 6,[1] and Article I, section 4,[2] of the Idaho Constitution (the "Idaho Religion Clauses"), and the Establishment Clause of the United States Constitution. Plaintiffs originally sued in state court. Defendants removed the case to federal district court. The district court allowed several students and parents to intervene on the side of the school district. The intervenors claim that they have a right under the Free Speech and Free Exercise Clauses of the United States Constitution to have a prayer at the graduation ceremony. Both the plaintiffs and intervenors moved for summary judgment. The district court declined to rule on the state law issues, held that the prayers did not violate the Establishment Clause, and entered judgment for the defendants. Harris v. Joint Sch. Dist. No. 241, 821 F.Supp. 638, 639 n. 2, 639-44 (D.Idaho 1993). Plaintiffs appeal.
 
 DISCUSSION
 I. Idaho Constitutional Law Claims
 
 2
 Plaintiffs first contend that the district court erred by declining to decide whether the prayers violated the Idaho Constitution. The district court ruled as follows regarding these state law claims
 
 
 3
 Given the fact that important state constitutional issues have been raised, this court finds that it is appropriate for those issues to be resolved by the courts of the State of Idaho. In light of the present posture of this case, rather than certifying questions to the Idaho Supreme Court, this court will rule on the federal constitutional issues and close the case. Thereafter, should they choose to do so, the parties may pursue the state constitutional issues in a state forum.
 
 
 4
 821 F.Supp. at 639 n. 2.
 
 
 5
 Though the district court's explanation is somewhat ambiguous, we conclude that the district court exercised its discretion to dismiss the state constitutional issues, over which it had pendant or supplemental jurisdiction.[3] "We review the district court's decision whether to exercise pendent jurisdiction for an abuse of discretion." O'Connor v. Nevada, 27 F.3d 357, 362 (9th Cir.1994); Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1309 (9th Cir.1992) ("clear error of judgment"), cert. denied, --- U.S. ----, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).
 
 
 6
 Section 1367(c) of 28 U.S.C. provides that a district court " 'may decline to exercise supplemental jurisdiction over a claim' if any one of the four circumstances listed in the statute exist." O'Connor, 27 F.3d at 362-63 (quoting the statute). As did the court in O'Connor, we find that "two of those circumstances ... exist in the present case," id. at 363: "the [state] claim[s] raise[d] ... novel or complex issue[s] of State law ... [and] the district court ha[d] dismissed all claims over which it ha[d] original jurisdiction...." 28 U.S.C. Sec. 1367(c)(1), (3); see O'Connor, 27 F.3d at 363.
 
 
 7
 First, whether the graduation prayers violate the Idaho Constitution is a novel and complex issue of first impression. The Idaho Supreme Court has not addressed prayer in the public schools in any context. Moreover, the state constitutional provisions bear no resemblance to those found in the First Amendment and appear to be the product of Idaho's unique religious history. Cf. Medrano v. City of Los Angeles, 973 F.2d 1499, 1506 (9th Cir.1992) (affirming dismissal of pendent claims in part because otherwise the district court would have to "resolve difficult questions of California law" (internal quotations omitted)), cert. denied, --- U.S. ----, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993).
 
 
 8
 Second, after the district court decided that no Establishment Clause violation had occurred, it dismissed all claims over which it had original jurisdiction. "[I]n the usual case in which federal-law claims are eliminated before trial, the balance of the factors of economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims." O'Connor, 27 F.3d at 363 (internal quotations and brackets omitted). For these reasons, "we conclude that the district court did not abuse its discretion in declining to consider the state constitutional law claim[s]." Id.
 
 
 9
 We recognize that generally a federal court "should avoid the adjudication of federal constitutional issues when alternative grounds are available, ... even when the alternative ground is one of state constitutional law." Carreras v. City of Anaheim, 768 F.2d 1039, 1042 (9th Cir.1985) (citation omitted). In this case, however, federal constitutional adjudication was necessary whether or not the state constitutional claim was present. If the district court had retained the Idaho constitutional claims and decided that the Idaho constitution was not violated, it would have had to resolve the plaintiffs' Establishment Clause claim. If the district court had decided that the prayers violated the Idaho Constitution, it would have had to decide the intervenors' Free Exercise claim. See Collins v. Chandler Unified Sch. Dist., 644 F.2d 759, 762-63 (9th Cir.) (resolving free exercise and free speech arguments raised by a school district, after holding that the district had violated the Establishment Clause), cert. denied, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981). As it was, the district court dismissed the state law claim and was left with only the federal claims. The district court was faced with federal constitutional adjudication no matter how it resolved the state law issues. Therefore, the doctrine recognized in Carreras does not require that the district court (or this court) consider the pendent state law claim. The Establishment Clause cases relied on by the plaintiffs, Ellis v. City of La Mesa, 990 F.2d 1518 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994), and Hewitt v. Joyner, 940 F.2d 1561 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992), are inapposite. In neither case was a federal free exercise or free speech right asserted.
 
 II. The Establishment Clause
 A. Lee and Collins
 
 10
 The plaintiffs contend that the district court erred in holding that the prayers did not violate the Establishment Clause. The Supreme Court recently addressed, in Lee v. Weisman, --- U.S. ----, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), whether a prayer said at a high school graduation ceremony violated the Establishment Clause.
 
 
 11
 In Lee, the principal of the high school invited Rabbi Leslie Gutterman to deliver prayers at the Nathan Bishop Middle School graduation. The principal gave the Rabbi a pamphlet, prepared by an organization of Christians and Jews, recommending what kinds of prayers should be given at civic ceremonies. The principal also advised the Rabbi that the prayers should be nonsectarian. The Rabbi's prayers were nonsectarian yet squarely in line with Judeo-Christian tradition. The graduation ceremony took place on school property. Attendance was stipulated by the parties to be voluntary. Students stood while the pledge of allegiance was said and remained standing during the prayers. The Court could not determine whether the Rabbi remained on the stage or participated in any other aspect of the graduation. Though the facts recited in the case describe only the Rabbi's prayer at the middle school, the school district's practice at the high school graduation, substantially the same as that at the middle school, was also at issue. Id. at ----, 112 S.Ct. at 2652-54.
 
 
 12
 The Court held that the prayers violated the Establishment Clause. Id. at ----, 112 S.Ct. at 2661. The Court reasoned,
 
 
 13
 These dominant facts mark and control the confines of our decision: State officials direct the performance of a formal religious exercise at ... graduation ceremonies for secondary schools. Even for those students who object to the religious exercise, their attendance and participation in the state-sponsored religious activity are in a fair and real sense obligatory, though the school district does not require attendance as a condition for receipt of the diploma.
 
 
 14
 Id. at ----, 112 S.Ct. at 2655. As to the first dominant fact, the Court reasoned that direction by state officials created a "potential for divisiveness" over religion. Id. at ----, 112 S.Ct. at 2656.
 
 
 15
 As to the second dominant fact, the position of the students, the Court reasoned that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools." Id. at ----, 112 S.Ct. at 2658. In this environment,
 
 
 16
 [w]hat to most believers may seem nothing more than a reasonable request that the nonbeliever respect their religious practices ... may appear to the nonbeliever or dissenter to be an attempt to employ the machinery of the State to enforce a religious orthodoxy.
 
 
 17
 .... The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the Invocation and Benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion. .... ... [F]or the dissenter of high school age, who has a reasonable perception that she is being forced by the State to pray in a manner her conscience will not allow, the injury is ... real. There can be no doubt that for many, if not most, of the students at the graduation, the act of standing or remaining silent was an expression of participation in the Rabbi's prayer. That was the very point of the religious exercise. .... What matters is that, given our social conventions, a reasonable dissenter ... could believe that the group exercise signified her own participation or approval of it.
 
 
 18
 Id. at ----, 112 S.Ct. at 2658. The Court also noted that whether attendance at high school graduation could be called "voluntary" or not was irrelevant. High school graduation is an extremely important event, important enough that "to say a teenage student has a real choice not to attend her high school graduation is formalistic in the extreme." Id. at ----, 112 S.Ct. at 2659. "It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice." Id. at ----, 112 S.Ct. at 2660.
 
 
 19
 This court has also addressed the practice of praying at high school assemblies. Collins v. Chandler Unified Sch. Dist., 644 F.2d at 759. In Collins, the Student Council requested and was granted permission by the principal to open with prayer student assemblies held on school property during school hours. The Student Council "allotted a certain amount of time on the [assembly] agenda and selected one member of the student body to say the prayer. The selected student was free to choose the manner and words in which the prayer was delivered." Id. at 760. Students not wishing to attend the assembly could "report to a supervised study hall." Id.
 
 
 20
 We held that these prayers violated the Establishment Clause, citing the "three part test enunciated in Lemon v. Kurtzman," 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). "That test establishes that a state regulation does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." 644 F.2d at 762. Applying the Lemon test, we found that, first, "the invocation of assemblies with prayer has no apparent secular purpose.... Second, the primary effect of such prayer appears to advance religion...." Id. (citations omitted). Third, the prayers involved excessive entanglement because "the school assemblies required surveillance by school officials and ... probably involved attendance by faculty or administrators needing to supervise the obviously large gathering of students." Id.
 
 
 21
 We also held that there was "no meaningful distinction between school authorities actually organizing the religious activity and officials merely 'permitting' students to direct the exercises." Id. at 761. Further, we noted that whether attendance at the assemblies could be called voluntary was irrelevant. "The ... students must either listen to a prayer chosen by a select group of students or forego the opportunity to attend a major school function. It is difficult to conceive how this choice would not coerce a student wishing to be part of the social mainstream and, thus, advance one group's religious beliefs." Id. at 762.
 
 B. Facts of this Case
 
 22
 We examine the facts of this case against the background of Lee and Collins. Grangeville High has had an invocation and a benediction at high school graduation since 1981 or earlier. Grangeville High's graduation is in many if not most respects like the graduation at issue in Lee. The fairly standard program has been repeated year after year.[4] Graduation is held in the school gymnasium. The school board sets the time for graduation. The school pays the bills for the ceremony, from public funds, including costs of the building, chairs, platform for speakers, sound system, secretarial help, and janitorial staff.
 
 
 23
 The school district contends, however, and the district court found, that the facts in this case differ from Lee in a manner that makes Lee inapposite. The school district has taken a number of steps to distance itself from the decisions whether to have a prayer, who to select to say it, and how it is to be said. Essentially, the school district claims that the Grangeville High senior class, as a group, by majority vote, have made these decisions and otherwise planned the graduation program without interference from school officials.
 
 
 24
 [I]n this case it is the senior students themselves, not the principal, who determine every element of their graduations, including whether or not prayer will be part of the ceremony, and, if so, who will say it.
 
 
 25
 ....
 
 
 26
 Although each and every element of high school graduation may not be "voted on" by the senior class, if the students chose to change traditions or change the way in which the graduation ceremony occurs, the students would have the right and authority to do so. For example, the students could decide that no music be played, that the national anthem not be played, that there not be a printed program, that there not be a speaker, or the students could decide to completely change the sequence of graduation and who presents diplomas. The fact that the students may not in a given year vote on each and every procedure does not in any way affect the senior class students' opportunity to decide these issues.
 
 
 27
 Harris, 821 F.Supp. at 641 (quoting the school district's statement of facts).
 
 
 28
 In November 1990, School District Superintendent Al Arnzen sent a memo to all principals regarding prayer at graduation ceremonies. The memo stated:
 
 
 29
 I just want to make sure we are all doing the same thing for Invocation and Benediction at graduation. The school board is permitting ... and not requiring Invocation and Benediction at graduation. These are the guidelines I want you to follow:
 
 
 30
 1. Let the senior students vote on whether they do or don't want Invocation and Benediction at graduation.2. If the answer is yes, then they should vote on whether they want a minister or a student to say the Invocation and Benediction.
 
 
 31
 3. If the students vote for a minister, then the students should vote on which minister they want to say the Invocation and Benediction.
 
 
 32
 4. If the students vote for students to say the Invocation and Benediction, you may want to have the 3rd and 4th students in GPA do this. Make everything an option and let the students vote. We will dictate nothing to the students. If a student does not want to go to graduation, I would not force the issue. Give him/her the diploma after the graduation exercise.
 
 
 33
 Id. at 641-42 n. 7. The memo "did not change existing policy, but simply reinforced" prior practice. Id. at 642 (internal quotations omitted). However, from 1991 forward, students were given written ballots for the prayer poll, whereas before a hand vote was taken.
 
 
 34
 Also, since 1991, the following disclaimer has appeared in the commencement programs:
 
 
 35
 The Board of Trustees of Joint School District No. 241 neither promotes nor endorses any statements made by any person involved in the graduation ceremony. The District endorses each person's free exercise of speech and religion and any comments or statements made during the graduation ceremony should not be considered the opinions or beliefs of the District, the Board of Trustees or the Superintendent.
 
 
 36
 Id. On the basis of these facts, the district court concluded that there was "little or no [state] involvement" in the process resulting in prayer. Id. at 643.
 
 
 37
 To the facts relied on by the district court, defendants add the following: The students' freedom to plan the program is illustrated by the fact that in 1990 the benediction consisted of a musical number by two graduating students. In 1992, Grangeville again had a musical benediction. In 1993, Clearwater Valley High, also in District No. 241, had a moment of silence, without prayers. While Grangeville High principal Judy Leuck has in the past asked students who participate in commencement, including those who pray, to write down what they will say, no school official reviews presentations prior to commencement. No one is asked to participate in the prayer by standing, bowing their heads, or removing their hats. The prayer is not included in commencement rehearsal.
 
 
 38
 The district also notes that seniors can choose whether or not to have the commencement. If the class goes ahead with commencement, senior class officers have the responsibility to contact individuals participating. The senior class pays for the printed commencement program from funds it has raised and from student activity fees it receives from the school. The district does not consider the commencement to be part of its educational program. Beyond these facts, the intervenors stress that seniors make all decisions relating to the ceremony. In fact, Superintendent Arnzen agreed with the statement that "[t]he principal doesn't have the power to decide that there will be no prayer at graduation."
 
 
 39
 The plaintiffs wish us to consider other facts: Some students voted not to have prayer at graduation. Seniors have never voted on some aspects of graduation. For instance, that the school band play the processional has never been questioned. Rather, the school principal and band director have arranged that in order to involve students in the graduation ceremony. The prayers that were given were Christian prayers. Some school board members made statements to the press in support of graduation prayers. Principal Leuck agreed that, under present school policy, school officials would not interfere with a graduation planned by the senior class even if the students voted to "have the whole thing be a religious service."
 
 C. Analysis
 1. Lee and Collins Applied
 
 40
 The Court in Lee noted two facts that marked and controlled its decision: (1) state involvement and (2) the obligatory nature of the students' participation in the religious activity taking place at graduation. The district argues that the first controlling fact of the Lee decision, state involvement, is absent in this case. The district claims that the involvement of the seniors in place of the school district is sufficient to distinguish Lee and shield the prayers from the reach of the Establishment Clause.
 
 
 41
 In support, the district cites Jones v. Clear Creek Indep. Sch. Dist., 977 F.2d 963 (5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). Jones addressed a school district policy similar to that involved in this case. The school district gave discretion to the senior class to choose whether they would have prayers at graduation. Id. at 964, 964 n. 1. The Jones court concluded that, because the school district had engaged in no acts of state control similar to those present in Lee, the Establishment Clause did not prohibit the prayers. Id. at 970-71. The Jones court further concluded that, because the students themselves participated in the decision as to whether prayers should be said, there was less coercive effect on the students who attended graduation. Id. at 971-72. Jones also held that the school district's determination to delegate the decision to the seniors, with prayers resulting, passed the Lemon test. Id. at 966-69.
 
 
 42
 We are not persuaded by the reasoning in Jones. In this case, we find present both of the factors relied on by the Court in Lee.
 
 
 43
 a. State Involvement
 
 
 44
 For several reasons, we find state involvement in this case pervasive enough to offend Establishment Clause concerns. First, the school ultimately controls the event. "At a high school graduation, teachers and principals must and do retain a high degree of control over the precise contents of the program, the speeches, the timing, the movements, the dress, and the decorum of the students." Lee, --- U.S. at ----, 112 S.Ct. at 2660; see also Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Significantly, all of the parties in this case agree that the seniors have authority to make decisions regarding graduation only because the school allows them to have it. No party has argued that high school seniors, as a class, have an exclusive right to direct their high school graduation by majority vote. To the contrary, the parties appear to agree, as we do, with what Superintendent Arnzen said was a fair characterization of graduation: "[T]he graduation ceremony is the presentation by the school of diplomas representing graduation certificates to the people who have fulfilled the requirements of the high school for graduation." (Emphasis supplied.)
 
 
 45
 Second, the school underwrites the event. The school offers to the senior class, at no cost, the building and other expenses. Even the commencement programs are paid for in part with money the senior class is allotted from student registration funds. The graduation is attended and approved of by school officials. School officials encourage the senior class officers to prepare graduation and give them some control over the program in order to encourage leadership.
 
 
 46
 Given that graduation is ultimately a school-controlled, school-sponsored event, there appears in this case to be just as much state involvement as appeared in Collins. As in Collins, the assembly in this case occurs on school property at a time scheduled and set aside by school officials.[5] With respect to state involvement, there is little if anything to distinguish the Grangeville High graduation ceremony from the school assemblies at issue in Collins.
 
 
 47
 We held in Collins that the fact that students set the assembly agenda and make decisions as to whether a prayer shall occur, who shall say it, and how it shall be said is insufficient to distance school officials from what would otherwise be an Establishment Clause violation. We found "no meaningful distinction" between school officials acting directly and school officials "merely permitting students to direct the exercises." 644 F.2d at 761 (internal quotations omitted). Under Collins, therefore, whether school officials make the decisions or give their authority to decide to another, the ultimate responsibility for those decisions is borne by school officials. Applied in this case, Collins requires us to find state involvement sufficient to violate the Establishment Clause.
 
 
 48
 That school officials cannot divest themselves of constitutional responsibility by allowing the students to make crucial decisions should not be surprising. "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." Board of Educ. v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). Because state and federal governments are republican in nature, the Constitution usually acts to limit the power of representatives. The Constitution's reach is not limited only to the acts of representatives, however. Elected officials cannot avoid constitutional mandates by putting them to a majority vote. "One's ... fundamental rights may not be submitted to vote; they depend on the outcome of no elections." Id. "The notion that a person's constitutional rights may be subject to a majority vote is ... anathema." Gearon v. Loudoun County. Sch. Bd., 844 F.Supp. 1097, 1100 (E.D.Va.1993). Giving majorities the power of the state without constitutional restrictions undermines the limitations on majority oppression the Constitution establishes. It also in this case would inject into our public schools the divisiveness regarding religion against which the Lee decision intended to guard. --- U.S. at ----, 112 S.Ct. at 2656.
 
 
 49
 Furthermore, elected officials cannot absolve themselves of a constitutional duty by delegating their responsibilities to a nongovernmental entity. Even private citizens when acting with government authority must exercise that authority constitutionally. Cf. Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966) (stating that "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action," and listing examples); Griffin v. Maryland, 378 U.S. 130, 135, 84 S.Ct. 1770, 1772-73, 12 L.Ed.2d 754 (1964) (holding an amusement park employee had engaged in state action); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (holding a private political society was sufficiently involved in the local electoral process to warrant oversight by the judiciary lest the society deprive other voters of their constitutional rights).
 
 
 50
 In Collins, the school delegated its authority to make decisions regarding school-sponsored, school-controlled assemblies to the Student Council. In this case, the school district has delegated its authority to make decisions regarding a school-sponsored, school-controlled event to the Grangeville High senior class. Lee holds that school officials cannot do what the senior class has done in this case. We cannot allow the school district's delegate to make decisions that the school district cannot make. When the senior class is given plenary power over a state-sponsored, state-controlled event such as high school graduation, it is just as constrained by the Constitution as the state would be.
 
 
 51
 Indeed, a decision to the contrary would allow school boards in religious communities generally to avoid Establishment Clause concerns in the public schools. The school board could allow students to vote daily prayers and the Ten Commandments back into their classrooms. See Engle v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (daily prayers); Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (the Ten Commandments). "While in some societies the wishes of the majority might prevail, the Establishment Clause" requires us to reject that path. Lee, --- U.S. at ----, 112 S.Ct. at 2660. In short, we are "not persuaded that the responsibility of the School Board may be treated so lightly as the School Board insists." Collins, 644 F.2d at 762 (internal quotations omitted).
 
 
 52
 The school district's disclaimer on the commencement programs does not save the school's practice. The student in the religious minority is well aware that the school has delegated authority over the prayers to the majority of her classmates while retaining ultimate control over the school-sponsored meeting. The student is also aware that the effect of the delegation is that her religious views are subordinated to the majority's. While the district asserts that it "neither promotes nor endorses" the stated views, this disclaimer flies in the face of what the student knows is occurring.
 
 
 53
 Cases cited by the school district are not to the contrary. Zobrest v. Catalina Foothills Sch. Dist., --- U.S. ----, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), addressed whether the state could provide a publicly-paid interpreter to a deaf student whose parents had chosen to place him in a private parochial school. The Court held that the Establishment Clause was not offended, in part because the statute providing a publicly paid interpreter accorded parents the right to select a school. Thus, the presence of the interpreter in the parochial school was solely the result of private choice, not "state decisionmaking." --- U.S. at ----, 113 S.Ct. at 2467. Zobrest involved a neutrally distributed benefit, however, the right to an interpreter. In this case, the privilege to choose whether a prayer will be said at graduation is not a neutrally distributed benefit. Each student is not allowed to have the graduation she wants. Instead, the decision is made by a majority of the senior class and imposed on a minority. Moreover, the majority-designated speaker who prays at graduation teaches religion, unlike the interpreter in Zobrest who neutrally passes on the messages given by others. See --- U.S. at ----, 113 S.Ct. at 2469.
 
 
 54
 Nor is Collins undercut, as the school district suggests, by Lamb's Chapel v. Center Moriches Sch. Dist., --- U.S. ----, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), Board of Educ. v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), or Garnett v. Renton Sch. Dist. No. 403, 987 F.2d 641 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993). Specifically, the school district contends that its high school graduation is an open forum in which student speech is allowed on a nondiscriminatory basis such that the Establishment Clause is not offended. The school district contends Justice O'Connor's opinion in Mergens is most apposite:
 
 
 55
 "[A]n open-forum policy, including nondiscrimination against religious speech, would have a secular purpose" ... [Such a forum] does not "confer any imprimatur of state approval on religious sects or practices." Indeed, the message is one of neutrality rather than endorsement; if a State refused to let religious groups use facilities open to others, then it would demonstrate not neutrality but hostility toward religion.
 
 
 56
 496 U.S. at 248, 110 S.Ct. at 2370-71 (opinion of O'Connor, J., for herself and three other Justices) (quoting Widmar v. Vincent, 454 U.S. 263, 271, 274, 102 S.Ct. 269, 275, 276, 70 L.Ed.2d 440 (1981)) (citations omitted). All of these cases involved the use of school property as a "public" or "open" forum of some sort, in which school officials allowed on a nondiscriminatory basis various non-school-related meetings to be held on school property when the property was not being used for school purposes. Lamb's Chapel and Mergens held that if school officials create such a forum they cannot decline to allow religious meetings to be held under similar circumstances solely because those meetings involve religion. Lamb's Chapel, --- U.S. at ---- - ----, 113 S.Ct. at 2146-49; Mergens, 496 U.S. at 243-47, 110 S.Ct. at 2368-70; 496 U.S. at 248, 110 S.Ct. at 2370-71 (opinion of O'Connor, J.); see Widmar v. Vincent, 454 U.S. at 271, 274, 102 S.Ct. at 275, 276. Garnett held that the Equal Access Act, 20 U.S.C. Secs. 4071-74, on which Mergens partly relies, overrides state constitutional law contrary to it. 987 F.2d at 644-46. In all of these cases, attendance at all religious as well as non-religious meetings was entirely voluntary, no religious meeting was sponsored by the school, and school officials neither encouraged nor participated in the meetings except on a custodial basis. E.g., Lamb's Chapel, --- U.S. at ---- - ----, 113 S.Ct. at 2143-48; Mergens, 496 U.S. at 231-47, 110 S.Ct. at 2362-70.
 
 
 57
 Contrary to the suggestion of the district, this case does not involve an open forum, at least with respect to prayer at graduation and the rights of students in the minority, whose rights are at issue in this case, see Lee, --- U.S. at ----, 112 S.Ct. at 2658. Only speakers chosen by the majority of the senior class are allowed. The message of the speakers is also chosen by the majority; the relevant speakers are instructed to pray. No matter what message a minority of students may wish to convey, the graduation forum is closed to them. A forum that allows only selected speakers to convey an established message and forecloses a significant portion of its members from any speech at all is not open in the required sense. See Brody v. Spang, 957 F.2d 1108, 1117-20 (3d Cir.1992). "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). Lamb's Chapel, Mergens, and Garnett are therefore inapposite. Moreover, in this case, attendance is not entirely voluntary, the graduation is sponsored by the school, and school officials participate heavily in the production and presentation of commencement.
 
 
 58
 Collins therefore remains valid law and (with Lee ) controls this case as regards whether state involvement was present. As implied by this discussion, we find the reasoning of Jones and cases following it[6] flawed. In any event, Collins requires us to reject Jones's reasoning. Collins demonstrates that the decision of school officials to hold a prayer is not the only sort of state involvement precluded by the Establishment Clause.
 
 
 59
 b. Coercion
 
 
 60
 Once the requisite state involvement is shown, the rest of this case is indistinguishable from Lee. Students are as obligated to attend and participate in graduation prayers, either by bowing their heads or "maintain[ing] respectful silence," Lee, --- U.S. at ----, 112 S.Ct. at 2658, at Grangeville High graduation as at the high school commencement discussed in Lee. Collins is also instructive: "[S]tudents must either listen to a prayer chosen by a select group of students or forego the opportunity to attend" not just a school assembly but their own graduation. See Collins, 644 F.2d at 762. "It is difficult to conceive how this choice would not coerce a student wishing to be part of the social mainstream...." Id. The presence of state involvement and the obligatory nature of the students' participation in the religious activity taking place at graduation render the Grangeville High graduation prayers unconstitutional.[7]
 
 2. Lemon Applied
 
 61
 Analysis under the Lemon test, reviewed in Collins, leads to a similar conclusion. Under the Lemon test, we examine whether the state action has a secular purpose, has a primary effect of advancing or inhibiting religion, or fosters excessive entanglement with religion. Collins, 644 F.2d at 762.
 
 
 62
 "A government practice ... fails the purpose prong of Lemon if its purpose is to endorse a religious custom or viewpoint." Kreisner v. City of San Diego, 1 F.3d 775, 781 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994). Collins held that "the invocation of assemblies with prayer has no apparent secular purpose...." Collins, 644 F.2d at 762. The graduation assembly or ceremony at issue here presents no circumstances that would distinguish it from Collins. The school district suggests that the prayer is intended to solemnize the occasion. However, we find solemnization through prayer no more secular than the use of prayer in "the promotion of moral values, the contradiction to the materialistic trends of our times, [and] the perpetuation of our institutions...." Abington School Dist. v. Schempp, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963). Prayer and reading of the Bible without comment in public schools were alleged to serve such purposes in Abington, yet these goals were insufficient to save those practices under the Establishment Clause. 374 U.S. at 223-24, 83 S.Ct. at 1572. Nor was the teaching of legal history sufficient to save the practice of displaying the Ten Commandments on the high school wall in Stone v. Graham, 449 U.S. at 39-40 n. 1, 41-42, 101 S.Ct. at 192-93 n. 1, 193-94. Prayer is probably the "quintessential religious practice." Jaffree v. Wallace, 705 F.2d 1526, 1534 (11th Cir.1983), aff'd, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). We conclude that solemnization is insufficient in this case to secularize what is objectively and inherently religious.
 
 
 63
 Even if the prayers did have a secular purpose, "the primary effect of such prayer appears to advance religion...." Collins, 644 F.2d at 762. The prayers said in this case are indistinguishable from those that might be said in a church service. If said there, no one would dispute that their intent and primary effect was to advance religion. We do not think the character of the prayers changes when said at graduation. For the foregoing reasons, we conclude that application of the Lemon test demonstrates an Establishment Clause violation in this case.
 
 III. Free Speech and Free Exercise
 
 64
 Like the school district in Collins, the district here and the intervenors argue that to deny students permission to pray at graduation would violate the students' rights to free speech and free exercise of religion. See Collins, 644 F.2d at 762-63. Essentially, the district and intervenors argue that, by giving the senior class authority to control events at graduation, the government has created an "open forum" at which, under the First Amendment, the government may not limit the speech that occurs. In support, they cite Mergens, 496 U.S. at 248, 110 S.Ct. at 2370-71 (opinion of O'Connor, J., for herself and three other Justices) (quoting Widmar v. Vincent, 454 U.S. at 271, 274, 102 S.Ct. at 275, 276); Kreisner, 1 F.3d at 775 (holding that the city could not constitutionally exclude from a city park a creche displayed at Christmas by a private group); Jaffe v. Alexis, 659 F.2d 1018, 1020 (9th Cir.1981) (holding that the California Department of Motor Vehicles (DMV) could not constitutionally prohibit Krishnas from disseminating tracts and soliciting funds on DMV property that the DMV had "made generally available to the public for speech activities"); and Hedges v. Wauconda Community Unit Sch. Dist. No. 118, 9 F.3d 1295 (7th Cir.1993) (holding that a school could not prohibit or restrict students' dissemination of religious literature more than other literature). As discussed above, in Mergens various kinds of non-school-related speech were allowed on a nondiscriminatory basis. See 496 U.S. at 243-47, 110 S.Ct. at 2368-70. The same was true in Widmar, 454 U.S. at 267, 274, 102 S.Ct. at 273, 276, Kreisner, 1 F.3d at 778, and Jaffe, 659 F.2d at 1020. Moreover, the city park at issue in Kreisner was a traditional open forum. 1 F.3d at 783. Our conclusion that the Grangeville High graduation is not an open or public forum with regard to the prayers disposes of this free speech argument.
 
 
 65
 Collins disposes of the free exercise argument. "[T]hese high school students are free to worship together as they please before and after the school day," Collins, 644 F.2d at 763 (internal quotations omitted), and outside of the graduation ceremony. Moreover, by entering the public sphere and planning a state-controlled, state-sponsored meeting, the students entered the domain of the Establishment Clause. "When the explicit Establishment Clause proscription against prayer in the public schools is considered the protections of political and religious speech are inapposite." 644 F.2d at 763 (internal quotations omitted).[8]
 
 
 66
 Contrary to the suggestion of the district and the arguments of the intervenors, the district court will have little if any difficulty fashioning an enforceable remedy in this case. Nor will the school district have difficulty outlining what may take place at graduation. Just as the school district gave permission to the senior class to plan graduation in part, it may take back its permission in part. The school purportedly gave seniors this chance to plan graduation in order to teach them leadership. If so, then it can teach them the responsibilities that go with such leadership, one of which is to respect the constitutional rights of others.
 
 CONCLUSION
 
 67
 For the foregoing reasons, the decision of the district court is AFFIRMED in part and REVERSED in part.
 
 
 68
 EUGENE A. WRIGHT, Circuit Judge, concurring in Part I and dissenting from Parts II and III.
 
 
 69
 This is not a prayer case involving classrooms or school assemblies. Nor does it concern the selection by a high school principal of a clergyman to provide a graduation prayer. Rather, the issue is whether a school district in a rural Idaho community may delegate to graduating students the planning and execution of their commencement, including the decision to offer an invocation and a benediction.
 
 
 70
 Because I believe that the limited role of School District No. 241 does not convey a message of state endorsement of religion, I respectfully dissent from that portion of the majority opinion finding an Establishment Clause violation. Without such a violation, there is also no need for the majority to address the free speech and free exercise issues. I do agree that the district court properly declined to decide the state law claims.
 
 
 71
 In disposing of the merits, this court should follow the lead of the Fifth Circuit in Jones v. Clear Creek Independent Sch. Dist., 977 F.2d 963 (5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993), and the test spelled out by the Supreme Court in Lee v. Weisman, --- U.S. ----, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Both provide better guidance than our opinion in Collins v. Chandler Unified Sch. Dist., 644 F.2d 759 (9th Cir.), cert. denied, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981).
 
 
 72
 In Collins we held that student-sponsored prayer at school assemblies violates the Establishment Clause. Id. at 762. We explained that classroom prayer cases such as Abington Sch. Dist. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), and Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), supported "no meaningful distinction between school authorities actually organizing the religious activity and officials merely 'permitting' students to direct the exercises." Collins, 644 F.2d at 761.
 
 
 73
 But our holding in Collins must be limited to the context of school day assemblies. That students rather than officials made the decision could not have made a difference because the assembly prayers, like those invalidated in Abington and Engel, were held in an intrinsically coercive environment. All were conducted regularly on school grounds during time allocated for curricular activities when school attendance was legally mandated. See Abington, 374 U.S. at 223, 83 S.Ct. at 1572; Engel, 370 U.S. at 422, 82 S.Ct. at 1262; Collins, 644 F.2d at 760-61.
 
 
 74
 We must instead look to the test articulated by the Supreme Court in Lee, --- U.S. at ---- - ----, 112 S.Ct. at 2657-61, to measure the constitutionality of commencement prayer.[1] The Court held in Lee that a school violates the Establishment Clause when it exercises a high degree of control over graduation prayer, which in conjunction with the compelled nature of attendance, creates an unacceptable risk that students will be coerced to participate. Id. The school principal in that case decreed that an invocation and a benediction would be offered, chose the religious participant and prescribed the content. Id. at ----, 112 S.Ct. at 2655-56. The Court emphasized that Establishment Clause analysis is "delicate and fact-sensitive," id. at ----, 112 S.Ct. at 2661, and carefully limited its holding to the circumstances of the case. Id. at ----, 112 S.Ct. at 2655.
 
 
 75
 The majority finds the necessary degree of control because School District No. 241 retains ultimate authority over commencement, and sponsors the event by underwriting the costs.[2] It reasons that "school officials cannot divest themselves of constitutional responsibility by allowing the students to make crucial decisions." See majority opinion, supra at ----. This analysis, however, does not answer the underlying question examined in Lee: Does the School District's involvement in the decision to have and the presentation of an invocation and a benediction make it clear that the prayer bears the imprint of the state? --- U.S. at ----, 112 S.Ct. at 2657.[3]
 
 
 76
 The answer is no. As the district court concluded, "the record demonstrates that faculty and administrators have little or no involvement in that process." Harris v. Joint Sch. Dist. No. 241, 821 F.Supp. 638, 643 (D.Idaho 1993). The seniors independently plan their commencement, and decide whether to offer an invocation and a benediction. See majority opinion, supra at 452-53. The disclaimer in the commencement program reaffirms that the School District does not endorse any religious content. See majority opinion, supra at 452-53. Absent the requisite state control there is no coercive effect. Student-sponsored and initiated graduation prayer "place[s] less psychological pressure on students than the prayers at issue in Lee because all students, after having participated in the decision of whether prayers will be given, are aware that any prayers represent the will of their peers." Jones, 977 F.2d at 971.[4]
 
 
 77
 The School District merely accommodates the students' decision. Accommodation of and incidental benefits to religion do not violate the Establishment Clause. Lynch v. Donnelly, 465 U.S. 668, 681-83, 104 S.Ct. 1355, 1363-64, 79 L.Ed.2d 604 (1984). Accommodation does not endorse religious belief over disbelief, but rather shows respect for the fundamental values of others. Lee, --- U.S. at ---- - ----, 112 S.Ct. at 2676-77 (Souter, J., concurring).
 
 
 78
 And this accommodation in particular does not threaten to advance religion. Invocation and benediction have historically been integral and accepted elements of high school and college graduation ceremonies in this country. They have been part of a broader tradition of opening public ceremonies with prayer. Such formalities "serve, in the only ways reasonably possible in our culture, the legitimate secular purposes of solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in society." Lynch, 465 U.S. at 693, 104 S.Ct. at 1369 (O'Connor, J., concurring).
 
 
 79
 Presidents have regularly offered prayers in inaugural addresses.[5] School days begin with the Pledge of Allegiance and its reference to "one nation under God." The constitutionally valid practice of convening Congress with prayer dates back over two centuries to the year the Senate and House of Representatives reached final agreement on the language of the Bill of Rights. Marsh v. Chambers, 463 U.S. 783, 788, 103 S.Ct. 3330, 3334, 77 L.Ed.2d 1019 (1983). The new graduates in School District 241 deserve to so dignify their commencement. I would affirm.
 
 
 
 [1]
 Article IX, section 5 provides in part,
 ... Neither the legislature nor ... any ... school district ... shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian or religious society, or for any sectarian or religious purpose....
 Article IX, section 6, provides in part,
 [N]o teacher or student of any [public educational institution of the state] shall ever be required to attend or participate in any religious service whatever.
 
 
 [2]
 Article 1, section 4 provides in part,
 No person shall be required to attend or support any ... religious sect ...; nor shall any preference be given by law to any religious denomination or mode of worship.
 
 
 [3]
 The district court did not abstain under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman abstention is an "exception[ ] to [a federal court's] duty to adjudicate controversies properly before [it]." Richardson v. Koshiba, 693 F.2d 911, 915 (9th Cir.1982). The Pullman abstention doctrine allows a "federal court [to] postpone the exercise of its jurisdiction" pending resolution of a state law issue when such resolution would moot or present in a different light a present federal constitutional issue. Knudsen Corp. v. Nevada State Dairy Comm'n, 676 F.2d 374, 377 (9th Cir.1982)
 "A district court abstaining under Pullman must dismiss the state law claim and stay its proceedings on the [federal] constitutional question until a state court has resolved the state issue." Cedar Shake & Shingle Bureau v. City of Los Angeles, 997 F.2d 620, 622 (9th Cir.1993); see Manney v. Cabell, 654 F.2d 1280, 1285 (9th Cir.1980) ("The district court should retain jurisdiction of the federal constitutional issues at the request of either party, pending proceedings in the state courts."), cert. denied, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); Santa Fe Land Improv. Co. v. City of Chula Vista, 596 F.2d 838, 841 (9th Cir.1979) ("If the court abstains under Pullman, retention of jurisdiction, and not dismissal of the action, is the proper course."). "The purposes of Pullman abstention are said to be to avoid both unnecessary adjudication of federal questions and needless friction with state policies." Privitera v. California Bd. of Medical Quality Assurance, 926 F.2d 890, 895 (9th Cir.1991) (internal quotations omitted); C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir.1983). Pullman abstention is also intended to avoid the "premature determination of constitutional questions." C-Y Dev. Co., 703 F.2d at 377 (internal quotations omitted); accord Knudsen Corp., 676 F.2d at 377 ("One of the main principles served by the Pullman abstention doctrine is the avoidance of deciding constitutional issues.").
 In this case, the district court did not postpone the exercise of its jurisdiction. Nor did the district court stay its proceedings until the state court resolved the state law issues. Rather, the district court kept jurisdiction, addressed the federal question, and decided the case. After deciding the case, the district court "closed" it, so no jurisdiction was retained by the district court pending resolution of the state law claims. The district court's acts are inconsistent with abstention doctrines and purposes. They show that the district court did not intend to abstain but instead dismissed the pendant state law claims.
 
 
 [4]
 Grangeville High graduation is like most other high school graduations. The high school band plays a processional. After the traditional invocation, the band plays the national anthem. An invited speaker gives a commencement address. The principal presents the graduating class. A trustee of the school board presents the diplomas. Then the band plays again, a benediction is said, and the graduating class marches out. Only slight variations in this program have occurred in the last thirteen years (i.e., the pledge of allegiance in place of the national anthem)
 
 
 [5]
 That school officials establish the time of graduation renders irrelevant the fact that graduation does not take place during normal school hours
 
 
 [6]
 E.g., Adler v. Duval County Sch. Bd., 851 F.Supp. 446 (M.D.Fla.1994)
 
 
 [7]
 The district court reasoned that the Supreme Court could have "ban[ned] all prayer at graduation ceremonies" but has not done so. 821 F.Supp. at 643. In support, the district court noted that the Supreme Court considered Lee a fact-intensive decision. --- U.S. at ----, 112 S.Ct. at 2661. The district court also noted that Jones was decided after the Supreme Court had vacated and remanded for consideration in light of Lee an earlier Jones decision reaching the same result as did the Jones decision on which the school district relies. See Jones v. Clear Creek Indep. Sch. Dist., --- U.S. ----, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992) (remanding Jones v. Clear Creek Indep. Sch. Dist., 930 F.2d 416 (5th Cir.1991) (Jones I ), for reconsideration in light of Lee ). We think neither the fact-intensiveness of Lee nor the vacation and remand of Jones I supports the notion that the Supreme Court would tolerate the prayer in this case. Lee was fact-intensive because Establishment Clause "jurisprudence ... is of necessity one of line-drawing." --- U.S. at ----, 112 S.Ct. at 2661. Balancing interests and discerning purposes requires a "willingness to distinguish between real threat and mere shadow." Id. (internal quotations omitted). As to Jones, the district court was merely speculating. We do not know why the Supreme Court took no further action with regard to Jones I, 930 F.2d at 416. The district court's reliance on a denial of certiorari of the second Jones decision, see --- U.S. at ----, 113 S.Ct. at 2950 (denying certiorari to review Jones, 977 F.2d at 963), involves the same sort of speculation. See 821 F.Supp. at 643 n. 10
 
 
 [8]
 The intervenors also allege that disallowing seniors to pray at graduation denies them equal protection of the laws. We are unpersuaded. Prayer at graduation as the intervenors envision it violates the Establishment Clause. Denial of an opportunity to violate the Establishment Clause denies to the intervenors no equal protection right
 
 
 [1]
 In contrast to school assemblies, commencement comes annually outside of the regular curriculum. It is a community event held not for the entire student body, but for maturing seniors
 
 
 [2]
 The Supreme Court has clarified that custodial oversight "does not impermissibly entangle government in the day-to-day surveillance or administration of religious activities." Board of Education of Westside Community Schools v. Mergens, 496 U.S. 226, 253, 110 S.Ct. 2356, 2373, 110 L.Ed.2d 191 (1990)
 
 
 [3]
 For a full summary of the elements of control relied on in Lee see Jones, 977 F.2d at 970
 
 
 [4]
 I also agree with the Fifth Circuit that student initiated and presented prayer at commencement satisfies the Lemon test. See Jones, 977 F.2d at 966-68; see also Adler v. Duval County Sch. Board, 851 F.Supp. 446, 451-55 (M.D.Fla.1994)
 
 
 [5]
 President Bush in his inaugural address said:
 And my first act as President is a prayer. I ask you to bow your heads:
 Heavenly Father, we bow our heads and thank You for Your love. Accept our thanks for the peace that yields this day and the shared faith that makes its continuance likely. Make us strong to do Your work, willing to heed and hear Your will, and write on our hearts these words: "Use power to help people." For we are given power not to advance our own purposes, nor to make a great show in the world, nor a name. There is but one just use of power, and it is to serve people. Help us to remember it, Lord. Amen.
 Inaugural Addresses of the Presidents of the United States 346 (1989).